**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| CLAUDINE CALHOUN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:07cv871-TFM** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, Claudine Calhoun ("Calhoun") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the

correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Calhoun, age 57 at the time of the hearing, completed twelfth grade. Calhoun's past relevant work was as a poultry grader.[1] Calhoun alleges she became disabled on December 16, 2004 from osteoporosis and arthritis.[2] The ALJ determined Calhoun's last insured date was March 31, 2005, and therefore, must establish disability on or before then in order to be entitled to a period of disability and disability insurance benefits.[3] Calhoun did not engage in substantial gainful work activity between her alleged onset date and her date last insured.

The ALJ found the record evidence indicates Calhoun has severe lumbar and cervical degenerative disc disease, osteopenia, and hyperthyroidism through the date last insured.[4] After considering Calhoun's testimony, he found her medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. The ALJ found Calhoun's combination of impairments did not meet or equal in severity the criteria set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.[5] As of the date last insured, Calhoun's residual functional capacity permitted her to perform light work with mild to moderate postural limitations, mild manipulative limitations, no environmental limitations, and no mental restrictions. After a complete review of the record

---

[1] R. at 20.

[2] R. at 78.

[3] R. at 14.

[4] R. at 16.

[5] R. at 18.

and consideration of testimony by a vocational expert (VE), the ALJ determined Calhoun could perform her past work as a poultry grader. These findings regarding Calhoun's ability to work, as of the date last insured, rendered her ineligible for disability benefits under the Act.

### III. ISSUE

Calhoun raises three issues for judicial review:

1. Whether the ALJ erred in making an RFC assessment due to improper consideration of opinions by the treating physician and examining psychologist.

2. Whether the ALJ decision is supported by substantial evidence at step four of his decision.

3. Whether the ALJ properly considered non-exertional limitations arising from documented medical impairments.

### IV. DISCUSSION

**1. The ALJ did not err in assessing Calhoun's RFC, and properly evaluated opinions from the treating physician and examining psychologist.**

Calhoun argues ALJ error in his evaluation of the opinions from Calhoun's former treating physician, Dr. Olusina Akinduro, and examining psychologist, Ann Jacobs, Ph.D., which caused an incorrect assessment of her RFC. The Commissioner responds Dr. Akinduro's opinion conflicted with the evidence from his own treatment records, and that any evidence of Calhoun's mental impairment arose after her last date insured.

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart,* 357 F.3d 1232, 1240

(11th Cir. 2004), citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" is present where the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241, citing *Lewis*. When assessing medical evidence, an "ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (per curiam). Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question. *See* 20 C.F.R. § 404.1527(d)(1)-(6). "The weighing of evidence is a function of the factfinder, not of the district court. The question is not whether substantial evidence supports a finding made by the district court but whether substantial evidence supports a finding made by the Secretary." *Graham v. Bowen,* 790 F.2d 1572, 1575 (11th Cir. 1986).

Dr. Akinduro's treatment of Calhoun began in 2003, when she visited him a total of five times. Calhoun's complaints of back pain began in September, 2003, and she was prescribed Bextra, which controlled the pain.[6] Complaints of back pain were repeated in April, 2004, and Dr. Akinduro prescribed Flexeril for use on an as-needed basis.[7] Dr.

---

[6] R. at 218-19.

[7] R. at 215.

Akinduro did not treat Calhoun for back pain during her remaining visits in June, 2004.[8] The next record evidence from Dr. Akinduro which concerned Calhoun's back pain was the October, 2004, Medical Source Statement and Clinical Assessment of Pain wherein Akinduro found Calhoun suffered from pain so severe that it would hinder her ability to adequately perform work activities.[9] The assessment limited Calhoun to less than one hour per day of sitting, standing, and walking, with a lifting/carrying capacity of five pounds occasionally and one pound frequently. One month prior to this assessment by Dr. Akinduro, Calhoun visited Dr. Swati Nigam for treatment of back pain. Dr. Nigam diagnosed lumbago, but wrote Calhoun's pain was controlled with Flexeril.[10] Calhoun's subsequent visits to Dr. Nigam for back pain continued into 2005, and his treatment concluded on April 5, 2005, when he released her without limitation.[11] Dr. Nigam referred Calhoun to the Southeast Pain Management Center, and her back pain was finally resolved with epidural injections received at the Southeast Pain Management Center during visits from July, 2005 to April, 2006.[12] These additional records concerning Calhoun's treatment for back pain document symptoms and treatment which occurred after her last date insured, and are therefore not considered by

---

[8]R. at 212, 214.

[9]R. at 313-15.

[10]R. at 190-91.

[11]R. at 179.

[12]R. at 17.

the ALJ.[13]

Even though Calhoun argues the ALJ's decision to discount Dr. Akinduro's Medical Source Statement and Clinical Assessment of Pain because a previous ALJ had done so, the record shows otherwise. The ALJ discounted Dr. Akinduro's opinion as a reliable barometer of Calhoun's pain because he found the relevant treatment notes inconsistent with the opinion.[14] Further, the ALJ noted Dr. Akinduro's treatment notes indicated a pain level of "0" during multiple occasions.[15] The ALJ provided sufficient support for the weight given the opinion, and his findings constitute "good cause" for rejecting Dr. Akinduro's conclusions of excessive pain and physical limitation. *Phillips*, 357 F.3d at 1240.

Calhoun's challenge to the ALJ's treatment of an opinion by examining psychologist Ann Jacobs, Ph.D., also post-date her last date insured. The ALJ noted the initial referral for psychological evaluation occurred in June, 2005, when Calhoun was diagnosed with major depressive disorder and generalized anxiety disorder.[16] Interestingly, Dr. Jacobs clinical observations noted "[n]o pain behavior" and "no evidence of anxiety."[17] Dr. Jacobs did not recommend additional treatment or therapy for Calhoun.[18] The ALJ found no complaint of,

---

[13] R. at 14.

[14] R. at 20.

[15] R. at 20.

[16] R. at 18, 277.

[17] R. at 275.

[18] R. at 277.

nor treatment for, mental problems predating Calhoun's last date insured. His conclusion that Calhoun was not mentally impaired prior to her last date insured is supported by substantial evidence.

Given the ALJ's reasonable consideration of evidence from Dr. Akinduro and Dr. Jacobs, his RFC determination is likewise reasonable, as he noted no specific limitations imposed by treating physicians.[19] The ALJ gave substantial weight to the MRI which showed degenerative disc disease, but no evidence of spinal stenosis or encroachment on the neural foramina. The ALJ found these objective findings consistent with normal neurological examinations performed by multiple treating and examining physicians prior to Calhoun's date last insured.[20] Although he was not required to do so, the ALJ noted the resolution of Calhoun's pain from epidural injections in early 2006, and no reported physical restrictions from the Southeast Pain Management Center.[21] The court finds the ALJ did not err in his RFC finding that Calhoun was able to perform a broad range of light work prior to her date last insured.

### 2. The ALJ's step four decision is supported by substantial evidence.

Calhoun argues the ALJ erred in finding she was capable of performing her past work as a poultry grader, both as she performed it and as performed in the national economy. The

---

[19] R. at 20

[20] R. at 19.

[21] R. at 19-20.

Commissioner argues the ALJ finding was appropriate due to his reliance on VE testimony that Calhoun could perform this occupation as that job is generally performed in the economy.

The ALJ instructed the VE to assume a hypothetical individual with Calhoun's educational and vocational history who was able to perform a full range of light work with mild or moderate postural limitations, mild manipulative limitations, and no mental limitations. The hypothetical also included avoidance of hazards, heights, and dangerous machinery as environmental limitations. The VE responded such a person would be able to perform Calhoun's past work, and perform as a waitress, cashier, or assembler.[22] The ALJ decision referred to the occupational demands of poultry grader, as listed in the Dictionary of Occupational Titles. The position is performed at the light exertional level and requires no climbing, balancing, stooping, kneeling, crouching, or crawling, but does require frequent reaching, handling, feeling, and occasional fingering.[23]

Calhoun acknowledges a claimant is not disabled if she retains the RFC to perform an occupation either as actually performed, or as usually required in the national economy.[24] This principle is endorsed in the Commissioner's brief, and noted by the court. *See United States v. Wagner*, 499 F.3d 842, 853 (8th Cir. 2007); *Davison v. Halter*, 171 F.Supp.2d 1282, 1284-85 (S.D. Ala. 2001), quoting SSR-82-61. Calhoun's challenge focuses on whether the

---

[22] R. at 346.

[23] R. at 20.

[24] Pl. Br. at 12.

ALJ's RFC limitation of mild manipulative restrictions is consistent with a position which requires frequent reaching, handling, feeling, and occasional fingering.[25] The Commissioner responds that the ALJ's reliance upon the VE's opinion provides substantial evidence. The hypothetical included "mild manipulative limitations" and the VE opined a person so limited could perform work as a poultry grader.

Calhoun also contends the VE should have been asked to consider her drowsiness and mental limitations in determining whether her RFC was consistent with the job demands under consideration. In this case, Calhoun's self-reporting (in her SSA application and testimony), and Dr. Akinduro's discounted pain assessment are the only record sources for which suggest drowsiness is a limitation. Hence, the ALJ was not required to include it in his hypothetical. *Crawford v. Comm'r of Soc. Security*, 363 F.3d 1155, 1161 (11th Cir. 2004). Similarly, the ALJ did not err by excluding Calhoun's claim of mental impairment from the hypothetical. "Adequate documentation of past work includes factual information about those work demands which have a bearing on the *medically established* limitations." *See Davison, id.* at 1285, quoting SSR-82-62 (emphasis added). As discussed above in Part IV., 1., the record in Calhoun's case does not establish a mental impairment - severe or otherwise - which required consideration of mental limitations in the context of her past work.

In this circuit, substantial evidence is provided where an ALJ poses to the VE a hypothetical question which includes all of the claimant's impairments. *Phillips v. Barnhart,*

---

[25]Pl. Br. at 14.

357 F.3d 1232, 1240 n.7 (11th Cir. 2004) (citing *Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir.1999). Here, the hypothetical posed by the ALJ incorporated limitations consistent with Calhoun's credibly established limitations, as explained in his decision.[26] The expert concluded that a person with her physical abilities could perform all past work, including poultry grader.[27] Thus, substantial evidence supports the ALJ's finding that Calhoun could perform such work. *Phillips, id.* at 1240.

    3.    **The ALJ gave appropriate consideration to Calhoun's non-exertional limitations.**

Calhoun argues the ALJ did not properly consider the non-exertional limitations attributable to her documented medical impairments. The Commissioner responds Calhoun did not demonstrate the alleged limitations - drowsiness due to pain medication and mental impairment - existed prior to her last date insured of March 31, 2005. The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. *See* 20 C.F.R. §§ 404.1512, 416.912; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 1999).

Calhoun cites the Medical Source Statement and Clinical Assessment of Pain prepared by Dr. Akinduro in October, 2004, as evidence of her limitation due to drowsiness from pain

---

[26]R. at 18-20.

[27]R. at 346.

medication.[28] The ALJ gave little weight to this opinion because the conclusions did not reflect Dr. Akinduro's actual treatment of Calhoun.[29] The ALJ decision specifically contrasted Dr. Akinduro's notes indicating pain levels of "0" with the assessment indicating disabling pain and medication side effects.[30] Again, the self-reporting by Calhoun in disability application documents do not show a date with her signature, but appear to have been taken by Disability Specialist Jack Miller in April, 2005.[31] These records document Calhoun's condition after her date last insured and could not be considered by the ALJ.

Likewise, the claim of mental impairment prior to Calhoun's date last insured is also without merit. As discussed above in Part IV., 1., Calhoun never sought mental treatment prior to her referral by the Southeast Pain Management Center in June, 2005. Again, Dr. Jacobs did not observe any pain behavior or evidence of anxiety, and did not recommend additional treatment or therapy for Calhoun.[32] The ALJ found no complaint of, nor treatment for, mental problems predating Calhoun's last date insured. Again, his conclusion that Calhoun was not mentally impaired prior to her last date insured is supported by substantial evidence.

Finally, the ALJ decision as to Calhoun's RFC incorporated credibly established

---

[28]R. at 315.

[29]R. at 20.

[30]R. at 20.

[31]R. at 87-104.

[32]R. at 275, 277.

limitations due to pain.[33]  "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002).  The recognized limitations of light work with mild to moderate postural limitations and mild manipulative limitations reflect consideration of the established severe impairments.  The ALJ gave great weight to Calhoun's MRI studies which did not show spinal stenosis or encroachment on the neural foramina, and normal neurological examinations.  Her treatment by Dr. Akinduro and Dr. Nagim - prior to her last date insured - did not reflect disabling pain or extreme measures to control pain.  A doctor's conservative treatment tends to negate a claim of disability.  *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996).

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

Done this 29th day of August, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

---

[33]R. at 18-20.